UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Mems, Nathanial Khaliq, Philip Webb, Thurman Smith, and Byron Brown,

Plaintiffs,

v.

The City of St. Paul–Department of Fire and Safety Services,

Defendant.

Civ. File No. 97-1589 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

James Logan,

Plaintiff,

v.

The City of St. Paul–Department of Fire and Safety Services,

Defendant.

Civ. File No. 01-1378 (PAM/JGL)

---

This matter is before the Court on Plaintiffs' Motion for the Court to allow a site visit to St. Paul Fire Department Station 20 and nine Motions in Limine filed by Defendant.

**BACKGROUND**

Following summary judgment and a subsequent appeal, this case has distilled to one claim: Plaintiffs, African-American firefighters, were subject to acts of racially

FILED NOV 13 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

discriminatory harassment sufficient to create a hostile work environment, and Defendant St. Paul Fire Department ("SPFD") failed to take prompt and effective remedial action after Plaintiffs complained of this harassment.

The case has its origins in 1992 when Plaintiffs Robert Mems, Nathanial Khaliq, Thurman Smith, and Byron Brown sued SPFD for racial discrimination. The parties settled this suit two years latter. As part of this settlement, SPFD was released from all claims that these Plaintiffs might have had against SPFD which arose before June 17, 1994. In 1996, however, the same four Plaintiffs, joined by Philip Webb and James Logan, brought another action against SPFD for racial discrimination. Specifically, Plaintiffs alleged both disparate treatment and disparate impact.

SPFD moved for summary judgment on both claims. Judge Richard H. Kyle granted the motion, concluding that: (1) the Plaintiffs failed to allege conduct sufficiently severe and pervasive to create a hostile work environment; and (2) Plaintiffs failed to present sufficient statistically relevant evidence of disparate impact. See Mems v. City of St. Paul–Dept. of Fire and Safety Servs., 73 F. Supp. 2d 1031, 1044 (D. Minn. 1999) (Mems I). Plaintiffs appealed. The Eighth Circuit reversed on the disparate treatment claim but affirmed on the disparate impact claim. See Mems v. City of St. Paul–Dept. of Fire and Safety Servs., 224 F.3d 735, 741 (8th Cir. 2000) (Mems II). On remand, the case was assigned to this Court and is now scheduled for trial on November 19, 2001.

## DISCUSSION

### A. Plaintiffs' Motion for the Court to Allow a Site Visit

Plaintiffs request that the Court allow the jury to visit St. Paul Fire Station 20. Plaintiffs claim that such a visit will help the Court and jury understand the physical configuration of the facility, the equipment necessary for the Plaintiffs to perform their jobs, and the close quarters in which the Plaintiffs and their co-workers function.

Because such a visit would be time-consuming and disruptive of the ordinary course of the trial, the Court will balance the importance of the information that would be gained from such a visit against the extent to which such information can be secured from photographs, diagrams, or other evidence. In this case, although the physical configuration of the facility, and in particular the close quarters of the work environment, is relevant to the case, information about this configuration can be adequately presented to the jury through photographs, video recordings, or diagrams as well as through testimonial evidence. Accordingly, the importance of a site visit is minimal. The Court therefore denies Plaintiffs' request.

### B. Defendants' Motion to Exclude Evidence Relating to Damages for Alleged Disparate Treatment in Discipline or Promotional Practices

Defendant contends that Plaintiffs cannot present evidence that they suffered discriminatory discipline because they failed to address this claim in their memorandum opposing summary judgment. Judge Kyle, accordingly, concluded that Plaintiffs had abandoned this claim. See Mems I, 73 F. Supp. 2d at 1032 n. 1. Similarly, Defendant argues

that Plaintiffs cannot contend that they were harmed by disparate promotional practices because the only claim remanded for trial by the Eighth Circuit was the Plaintiffs' hostile work environment claim. See Mems II, 224 F.3d at 741.

Plaintiffs respond by arguing that a disparate treatment claim is not limited to economic or tangible discrimination, but extends to the entire spectrum of disparate treatment, which includes requiring people to work in discriminatorily hostile or abusive environments. The Court agrees. The touchstone for a hostile work environment claim is whether "the workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Dowd v. United Steelworkers of Am., Local No. 286, 253 F.3d 1093, 1101-02 (8th Cir. 2001) (quoting Quick v. Donaldson Co., 90 F.3d 1372, 1378 (8th Cir. 1996) (quoting Harris v. Forklift Sys., Inc. 510 U.S. 17, 21 (1993))). Evidence related to Defendant's alleged discriminatory disciplinary practices is relevant to Plaintiffs' disparate treatment claim insofar as those practices tend to show that the workplace was permeated with discriminatory animus sufficient to alter the conditions of Plaintiffs' employment.

The Court declines, however, to revivify Plaintiffs' claim that the Defendant's promotional practices had a disparate impact on them. That claim was dismissed during the summary judgment phase of this litigation. Plaintiffs' shrewdly attempt to render evidence about the alleged discriminatory promotional practices of Defendant admissible by characterizing it as evidence that Plaintiffs chose not to take the promotional exam because

of the hostile work environment. This sleight sleight of hand, however, is not sufficient to render such evidence admissible.

Accordingly, the Court grants Defendant's motion in part and denies it in part. Specifically, Plaintiffs may present evidence relating to the alleged discriminatory disciplinary practices of Defendant. Plaintiffs may not, however, introduce evidence relating to alleged disparate treatment resulting from Defendant's promotional practices.

**C. Defendant's Motion to Exclude a Claim for Constructive Discharge**

Defendant argues that Plaintiffs are trying to amend their pleadings by alleging that a hostile working environment was a substantial contributing factor to several of the Plaintiffs' decision to retire. Defendant contends that (1) this claim should be barred because it was not properly pled; (2) this claim should be barred because Defendant was not given an adequate chance to move for summary judgment on it; and (3) the claim would be "new to the law."

Four of the Plaintiffs were deposed by Defendant's counsel regarding this claim. Accordingly, Plaintiffs argue the claim is not "new" in a prejudicial sense.

The Court grants Defendant's Motion. Although evidence that the Plaintiffs' decision to retire was based in substantial part on a hostile working environment may be probative of the fact that Plaintiffs subjectively felt that the workplace was hostile, see Callanan v. Runyun, 903 F.Supp. 1285, 1297 (D. Minn. 1994) (recognizing that a hostile work environment claim has "both an objective and a subjective component"), the Court agrees that Plaintiffs have not properly pled a constructive discharge claim. Because Plaintiffs can

establish the requisite subjective component of a hostile work environment claim through a myriad of other evidence, it is unnecessary and would be cumulative for the Plaintiffs to introduce evidence that they retired because of a hostile work environment. Not only is this evidence unnecessary and cumulative, but its probative value is outweighed by the potential that its introduction would confuse or mislead the jury. See Fed. R. Evid. 403.

**D. Defendant's Motion to Exclude the Expert Testimony of John Taborn**

Defendant contends that the Plaintiffs' expert witness, Dr. John Taborn, should not be allowed to testify at trial. Plaintiffs wish to have Dr. Taborn testify that although none of the Plaintiffs suffered from clinically diagnosable distress arising from discrimination, they each face "psychological predicaments" which take a "heavy psychological toll." Defendant essentially argues that: (1) Dr. Taborn's testimony misapplies the "psychological predicament" concept; (2) this misapplication is unscientific and unreliable; and (3) Dr. Taborn's testimony will not assist the jury.

The Court has the obligation to act as a "gatekeeper," screening proffered expert evidence to ensure that what is admitted "is not only relevant but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). To determine whether proffered expert evidence satisfies the standard of reliability, the Court must ascertain whether such evidence is "ground[ed] in the methods and procedures of science." Id. at 590. In this case, that determination is impossible to make on the basis of the information provided by the parties for this Motion. Accordingly, the Court will rule the admissibility of Dr. Taborn's testimony at a Daubert hearing. Until the Court determines whether Dr. Taborn's testimony is

admissible, the parties are ordered to avoid mention of Dr. Taborn's testimony during the trial.

### E. Defendant's Motion to Exclude Evidence of Alleged Violations that Occurred Outside the Statute of Limitations

Defendant contends that Plaintiffs should only be allowed to present evidence relating to alleged incidents of discrimination which occurred within 300 days of the filing of Plaintiffs' claims. Plaintiffs respond by arguing that the continuing violations doctrine, which renders a claim timely if it is based on an ongoing violation that began before the limitations period but continued into it, applies in this case. See Kline v. City of Kansas City Fire Dep't, 175 F.3d 660, 664-65 (8th Cir. 1999). Defendant asserts that the continuing violations doctrine is inapposite in this case because Plaintiffs allege only isolated instances of discrimination rather than a pattern or practice of discrimination. Even if the doctrine applies, however, Defendant argues that the probative value of this evidence is outweighed by the danger that it would be prejudicial.

Defendant may be right when it claims that the continuing violations doctrine does not apply in this case; however, "[e]ven if a plaintiff is unable to show a continuing violation, . . . instances of harassment occurring outside the [limitations] period may be admissible to provide relevant background to later discriminatory acts." Id. at 665 (quoting Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 761 (8th Cir. 1998). The Court is not persuaded that the probative value of such evidence is outweighed by its potentially prejudicial effect. Any possibility of prejudice can be adequately avoided during trial with appropriate prophylactic

instructions. Accordingly, the Court denies Defendant's Motion without prejudice. Defendant is free to argue at a later stage of this proceeding that the continuing violations doctrine should not operate in this case to delay the statute of limitations.

**F. Defendant's Motion to Exclude Certain Witnesses**

Defendant has filed this blanket motion which really amounts to a claim that Plaintiffs failed properly to disclose certain witnesses. Defendant contends that ten of the twenty-five friends and family members of Plaintiffs listed as being potential witnesses were not properly disclosed. Additionally, Defendant argues that if these witnesses are being called simply to testify about damages, five witnesses per Plaintiff is cumulative and burdensome. Finally, Defendant claims that five African-American firefighters who have been listed as potential witnesses because they have knowledge of the racially hostile work environment were not properly disclosed.

Plaintiffs respond by arguing that these witnesses were properly disclosed and by arguing that Defendant has not properly disclosed a number of its witnesses.

The Court does not endorse either side's failure to properly identify witnesses for trial. However, any improper disclosures in this case do not appear to have created any prejudice. The Court agrees with Defendant, however, that five damages witnesses per Plaintiff is unnecessarily cumulative and burdensome. Accordingly, each Plaintiff is limited to calling two damages witnesses.

**G. Defendant's Motion to Exclude a Photograph of Captain Michael Ness**

Plaintiffs want to introduce into evidence a photograph that was posted in Station 20 showing Captain Michael Ness and another firefighter extending their middle fingers to the camera. Defendant seeks to have the Court prohibit Plaintiffs from testifying that they felt that this picture communicated "fuck you, nigger." Because it is undisputed that no racial slurs occurred at Station 20 after the 1994 settlement, Defendant contends that allowing Plaintiffs to testify that this is what the picture said to them would allow Plaintiffs to improperly inject perhaps the most explosive of all racial epithets into evidence.

Plaintiffs contend they must show that the work environment was both objectively and subjectively hostile or abusive and that Plaintiffs' perceptions are valid and highly relevant. Although Plaintiffs are correct in stating that their perceptions are relevant, given the inflammatory racial invective at issue, the Court agrees with Defendant. The photograph's probative value is outweighed by its potential for substantial and unfair prejudice. Accordingly, Plaintiffs may not introduce the photograph into evidence.

**H. Defendant's Motion to Exclude Allegations Regarding Dino Guerin**

In 1996, Plaintiff Thurman Smith was accused of drug possession. In an effort to establish that this accusation was unfounded and discriminatory, Plaintiffs want to introduce evidence of allegations of drug use by a white firefighter, Dino Guerin. Defendant claims that this evidence is hearsay. Plaintiffs respond by arguing that they do not want to introduce statements that Dino Guerin allegedly possessed drugs to prove the truth of these allegations. Rather, they claim that they want to introduce this evidence to show how Defendant handled,

investigated, and responded to an accusation of drug abuse against a similarly situated Caucasian firefighter.

The Court is unpersuaded by Plaintiffs' argument. Although they may not be offering evidence that Dino Guerin allegedly used drugs to prove that Guerin actually did use drugs, they are offering such evidence to prove that Guerin was accused of possessing or using drugs. Because Plaintiffs have not identified any witnesses with personal knowledge who are competent to testify that Guerin was accused of possessing drugs, the Court grants Defendant's Motion.

**I. Defendant's Motion to Exclude Allegation Regarding Ron Buziky's Reaction to Gunshot**

Plaintiff Robert Mems was shot and injured in 1998. Apparently, Mems was later told that firefighter Tom Buzicky said that Mems should have died. Plaintiffs want to introduce this evidence in support of their contention that the workplace was hostile and racially charged. Defendant claims that there is no evidence that this comment was racially motivated and that Mems even admitted this in his deposition. Given the highly inflammatory nature of the comment, Defendant argues that its potential relevance is outweighed by its prejudicial effect. The Court agrees. Accordingly, Defendant's Motion is granted.

**J. Defendant's Motion to Exclude Testimony Regarding Conflict Between Captains Over Window Washing Schedule**

Plaintiffs want to introduce evidence relating to an incident that occurred between B-Shift Captain John Dubois and A-Shift Captain Mike Ness. Apparently, Ness called

Dubois a "fucking idiot." Both Captains are white. Accordingly, Defendant argues that this incident shows at most a personality conflict and has no relevance to the discriminatory working environment that Plaintiffs 'claim existed. Plaintiffs argue that the tensions between the shifts was racially based and accordingly contend that Ness's fulmination is directly related to this racial hostility.

The Court agrees with Defendant that evidence relating to this incident is not sufficiently connected to the racial tensions alleged in this case to warrant its admissibility. It is likely that such evidence would be misleading or confusing. See Fed. R. Evid. 403. Accordingly, Defendant's Motion is granted.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for the Court to Allow a Site Visit (Clerk Doc. No. 102) is **DENIED**;

2.. Defendant's Motions in Limine (Clerk Doc. No. 99) are **GRANTED in part** and **DENIED in part** as follows:

a. Defendant's Motion to Exclude Evidence Relating to Damages for Alleged Disparate Treatment in Discipline or Promotional Practices is GRANTED IN PART and DENIED IN PART as set forth above;

b. Defendant's Motion to Exclude a Claim for Constructive Discharge is GRANTED;

c. Defendant's Motion to Exclude the Expert Testimony of John Taborn will be ruled on after a Daubert hearing;

d. Defendant's Motion to Exclude Evidence of Alleged Violations that Occurred Outside the Statute of Limitations is DENIED without prejudice;

e. Defendant's Motion to Exclude Certain Witnesses is GRANTED IN PART and DENIED IN PART as set forth above;

f. Defendant's Motion to Exclude a Photograph of Captain Michael Ness "Flipping the Bird" is GRANTED;

g. Defendant's Motion to Exclude Allegations Regarding Dino Guerin is GRANTED;

h. Defendant's Motion to Exclude Allegation Regarding Ron Buziky's Reaction to Gunshot is GRANTED; and

i. Defendant's Motion to Exclude Testimony Regarding Conflict Between Captains Over Window Washing Schedule is GRANTED.

Dated: November 12, 2001

Paul A. Magnuson
United States District Court Judge